# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SONYA L. LONGO, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 04 CV 5759 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| LAW OFFICES OF GERALD E. ) | |
| MOORE & ASSOCIATES, P.C., ) | |
| WORLDWIDE ASSET ) | |
| MANAGEMENT, LLC, and ) | |
| WORLDWIDE ASSET PURCHASING, ) | |
| LLC, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sonya L. Longo, brought a class action against the Law Offices of Gerald E. Moore & Associates, P.C. ("GEMA"), Worldwide Asset Management, LLC ("WAM"), and Worldwide Asset Purchasing, LLC ("WAP") (collectively, "defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* On March 30, 2006, the court granted plaintiff's motion for class certification, defining the class as "all individuals, wherever located, who were sent a letter by one or more of the defendants referencing a fee for payments made by telephone in connection with a debt owned or serviced by or placed for collection with WAM or WAP anytime after September 1, 2003 and before September 21, 2004." Dkt. No. 50 (minute order) (March 30, 2006).

Before the court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which defendants filed on January 28, 2008. On that same day, plaintiff filed a motion for "summary determination" pursuant to Rule 56(d). After

reviewing all of the parties' briefs regarding both motions, however, the court has determined that plaintiff's motion essentially presents the flip side of defendants' motion and need not be addressed separately.

For the following reasons, defendants' motion for summary judgment [#113] will be granted. In light of the court's ruling on defendants' motion for summary judgment, plaintiff's motion for summary determination [#110] must be denied as moot.

## BACKGROUND

In 2004, Longo's MasterCard credit card account, issued by Direct Merchants Credit Card Bank ("DMCCB"), went into arrears. Defs.' Local Rule 56.1 Statement of Material Facts ("Defs.' SoF") ¶ 1. By June of that year, Longo's debt was written off by DMCCB with an outstanding balance of approximately $3,800. *Id.* ¶ 2. DMCCB subsequently sold Longo's account to WAP, a purchaser of consumer debt. *Id.* ¶ 3. WAP then forwarded Longo's account to WAM, a master-servicing agency, that in turn referred it to National Asset Management, which placed it for collection with GEMA. *Id.* ¶¶ 5, 6. On or about June 17, 2004, GEMA sent a letter to plaintiff identifying WAP as the new owner of her DMCCB debt and identifying GEMA as the firm handling collections on the account. *Id.* ¶ 7. On receipt of the letter, Longo forwarded it to her attorney, Jerome Lamet of Debt Counsel for Seniors, who was representing her with respect to debt collection issues. *Id.* ¶ 8. On or about July 6, Longo called GEMA, informed it that she was represented by Lamet, and provided his name and contact information. *Id.* ¶ 10. After that, Longo had no further direct contact with GEMA. *Id.* ¶ 12.

On or about July 21, 2004, GEMA sent out a collection letter addressed to Longo in care of her attorney at her attorney's office address, as follows:

2

SONYA L LONGO
C/O DEBT COUNSEL FOR SENIORS
542 S DEARBORN ST
CHICAGO, IL 60605-1508

Defs.' SoF ¶ 13; Pl.'s Resp. to Defs.' SoF ¶ 16; Pl.'s Resp. to Defs.' Mot. for Summary Judgment ("Pl.'s Resp.") at 6. The letter presented Longo with an offer to "settle" the account originating from her outstanding DMCCB debt. Defs.'SoF ¶ 13. The letter also stated, in part:

> If you have elected to make payments by phone, our office charges a processing and handling fee of $7.50 per transaction for this service. This fee is addition [*sic*] to your actual payment and the fee will not be credited to your outstanding balance.

Pl.'s Resp. to Defs.' SoF ¶ 13; Pl.'s Compl., Ex. A. Longo subsequently filed this lawsuit, alleging that the $7.50 fee referenced in the letter violates 15 U.S.C. § 1692f of the FDCPA and that defendants, by asking for the $7.50 fee, made deceptive representations in violation of § 1692e.

## STANDARD

Summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Trask-Morton* v. *Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). Further, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth* v. *Quotesmith.Com, Inc*., 476 F.3d 487, 490 (7th Cir. 2007) (citing *Celotex,* 477 U.S. at 324). A genuine issue of material fact must be outcome determinative under the governing law in order to warrant denial of summary

judgment. *Insolia* v. *Philip Morris Inc*., 216 F.3d 596, 598–99 (7th Cir. 2000). Finally, in resolving a motion for summary judgment, the court must construe all facts in the light most favorable to the non-moving party and view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc*., 477 U.S. 242, 255 n.2, 261, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Abdullahi* v. *City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

## DISCUSSION

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). A debt collector violates the FDCPA's prohibition against "unfair or unconscionable means" of collection when he attempts to collect from a debtor "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §§ 1692f, 1692f(1). The Seventh Circuit has held that FDCPA claims against debt collectors are generally examined from the standpoint of the "unsophisticated consumer." *Durkin* v. *Equifax Check Servs., Inc*., 406 F.3d 410, 414 (7th Cir. 2005); *Sims* v. *GC Servs. LP*, 445 F.3d 959, 963 (7th Cir. 2006). In *Evory* v. *RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2006), however, the Seventh Circuit adopted a more searching standard for examining communications by a debt collector to a consumer's attorney—the "competent lawyer" standard. *Id.* at 774–75. Under this standard, "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Id.* at 775. The reason for the heightened standard is that "most lawyers who represent consumers in debt-collection cases are knowledgeable about the law and practices of debt collection, . . . those who are not should be able to inform themselves sufficiently to be able

4

to represent their consumer clients competently, and . . . the debt collector cannot be expected to know how knowledgeable a particular consumer's lawyer is." *Id.* at 774–75.

The first issue is whether a letter naming the debtor as addressee but mailed, at the debtors's direction, to her lawyer's address should be evaluated from the perspective of the "unsophisticated consumer" or the "competent lawyer." Defendants argue that the July 21 letter was a communication to Longo's attorney. Plaintiff argues that because she was the addressee and the text of the letter was directed at her—employing language such as "*your* present balance" and "[i]f *you* are interested"—the letter qualifies as a communication meant only for her, and not her attorney. Pl.'s Resp. at 6. Defendants counter that *Evory*'s discussion of the role of the consumer's attorney in the debt collection process neutralizes the distinction that plaintiff is attempting to make. They argue that under *Evory*, a communication sent in care of an attorney functions as an indirect communication to the consumer and should be evaluated under the "competent lawyer" standard.

The court is not persuaded by plaintiff's suggestion that the June 21 letter should be viewed as a communication directly to the consumer, invoking the "unsophisticated consumer" standard. Under the FDCPA, when a debt collector knows that a consumer is represented by an attorney, he may communicate *only* through the attorney and not directly with the consumer. *Evory*, 505 F.3d at 773 (citing 15 U.S.C. § 1692c(a)(2)). In such a case, as here, "the lawyer receives the notice and shares it with, or explains it to, his client." *Id.* at 773. Only one reasonable inference can be drawn from the facts presented: Longo directed the debt collector to communicate with her through her counsel with the expectation that her counsel would handle the communications.

5

Plaintiff's citations to *Peralta-Cabrera* v. *Gonzales*, 501 F.3d 837 (7th Cir. 2007), and *Rosario* v. *American Collective Counseling Services, Inc.*, No. 2:01-CV-221-FTM-29DN, 2001 WL 1045585 (M.D. Fla. Aug. 27, 2001), are unpersuasive. In *Peralta-Cabrera*, an immigration case, the petitioner, who had been detained by the Immigration and Naturalization Service (INS), told the agents who arrested him that upon his release he would stay at the home of his friend's brother-in-law. 501 F.3d at 839. The Seventh Circuit held that it was the INS's responsibility to ensure that it mailed a hearing notice "in care of" the petitioner's friend's brother-in-law, rather than simply addressing it to the petitioner at the same address. *Id.* at 845. The case is relevant, if at all, only insofar as it suggests that mail addressed to a person who does not reside at an address will not be delivered by the United States Postal Service unless the mail is addressed "in care of" someone who does reside at that address. *Id.* at 840. Furthermore, *Peralta-Cabrera* does not implicate an agency or representative relationship such as the one between an attorney and his client, as in the present case. Examples of the use of the "in care of" designation to send mail to a person's designated representative or agent are easily found in the case law. *See, e.g.*, *Phillips* v. *N. Am. Capital Corp.*, No. 98 C 7538, 1999 WL 299872, at *1 (N.D. Ill. Apr. 30, 1999) (noting that a form collection letter was sent by a collection agency "in care of" the consumer's attorney, who was acting on the consumer's behalf).

Plaintiff's reliance on *Rosario*, an FDCPA case, is likewise unavailing. There, the defendants moved for summary judgment on the ground that because they sent collection notices to the plaintiff's attorney, not directly to plaintiff, she could not state a claim under the FDCPA. *Rosario*, 2001 WL 1045585, at *1. The district court held otherwise, finding that the purposes of the FDCPA would be furthered by allowing plaintiff to state a claim in this instance where the

6

communications were directed to her, "albeit at her attorney's address," and where the text of the communication was "plainly addressed to plaintiff and not her attorney." *Id.* The court thus concluded that "[u]nder these circumstances, the notices qualify as a communication to a consumer" under the FDCPA. *Id. Rosario*, however, is merely persuasive authority and was decided before *Evory*. Where, as here, it is clear that the debtor directed the debt collector to communicate with her through an attorney and the debt collector did so, this court reads *Evory* as pointing to the "competent lawyer" standard. *See* 505 F.3d at 773–775 (indicating that although a "debt collector is communicating with the consumer within the meaning of the [FDCPA]" when he communicates indirectly through the consumer's attorney, the "competent lawyer" standard nevertheless applies to such communications).

The next issue is whether, even if the July 21 letter constitutes a communication to an attorney, it is nevertheless actionable under the FDCPA because it contained a false representation. Even under the "competent lawyer" standard, a *false*—as opposed to merely misleading or deceptive—statement made by a debt collector "would be actionable whether made to the consumer directly, or indirectly through his lawyer." *Evory*, 505 F.3d at 775. As the Seventh Circuit explained, "[a] false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer." *Id.* For example, if a letter misrepresents the unpaid balance of the consumer's debt, then "[t]he lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake." *Id.*

Following the Seventh Circuit's logic in *Evory*, in order to determine whether the $7.50 fee is permissible under federal law, Longo's attorney would have to look to the applicable

7

provisions of the FDCPA. 505 F.3d at 774–75. There the attorney would find that § 1692 prohibits a debt collector from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §§ 1692f, 1692f(1). Consequently, plaintiff argues, to ultimately determine whether the fee was permissible, her attorney would need to obtain a copy of the agreement creating the debt, which Longo had not retained. Thus, plaintiff contends, her attorney "would not have been able to determine the validity of the $7.50 pay-by-phone convenience charge," Pl.'s Resp. at 8, "without an investigation that he might [have been] unable, depending on his client's resources, to undertake." *Evory*, 505 F.3d at 775.

Plaintiff's argument suffers from a number of fatal flaws. First, as defendants point out, this is the first time that plaintiff has alleged that the language in the July 21 letter regarding the $7.50 convenience charge constitutes a false representation. A plaintiff generally may not raise a new legal claim in response to a motion for summary judgment. *See Shanahan* v. *City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Tucker* v. *Union of Needletrades, Indus. and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) ("Once a case has progressed to the summary judgment stage . . . the liberal pleading standards under . . . [the Federal Rules] are inapplicable.") (internal quotation marks and citations omitted).

In her complaint, plaintiff alleges that "it is *deceptive* for defendants to state that they will impose the charge, in violation of 15 U.S.C. §§ 1692e and §§ 1692e(10)." Pl.'s Compl. ¶ 37 (emphasis added). Although the complaint later quotes the text of § 1692e(2), which identifies various types of false representations that are prohibited under the FDCPA, it never alleges that

the language regarding the $7.50 fee was a false representation nor that the letter contains any other false statement. The text of the FDCPA does not elucidate whether "deceptive," "misleading," and "false" are distinct claims under the FDCPA or if, instead, they can be alleged interchangeably. As discussed above, however, *Evory* suggests that a false representation is legally distinct from one that is merely misleading or deceptive.[1] 505 F.3d at 775. Indeed, in her response to defendant's motion, plaintiff relies on precisely this distinction, citing *Evory* and asserting that the "letter does not contain a deceptive representation, but a false representation." Pl.'s Resp. at 7 (citing *Evory*, 505 F.3d at 775). This newfound assertion is, at a minimum, inconsistent with the allegations in her complaint.

Ultimately, however, it is unnecessary to decide this question, because even if plaintiff has sufficiently claimed that the July 21 letter contained a false statement, she has provided no support for her contention that the language regarding the convenience fee actually constitutes a false representation. As defendants point out, the July 21 letter did not suggest that GEMA was entitled to the $7.50 fee. Rather, the letter merely states that if you elect to make payments by phone, GEMA charges a $7.50 fee. Pl.'s Compl., Ex. A. While this language arguably implies that the fee is legally permissible, it does not explicitly state as much. Thus, even if the fee is, as plaintiff asserts, prohibited under the FDCPA, the language in the letter regarding the fee cannot fairly be characterized as a false statement; at worst, it might be considered a deceptive or misleading representation.

---

[1] According to the Seventh Circuit, "'[m]isleading' is similar to 'deceptive,' except that it can be innocent; one intends to deceive, but one can mislead through inadvertence." *Evory*, 505 F.3d at 775.

9

Finally, even if the letter had expressly stated—rather than merely implied—that the convenience fee is legal (and, again, assuming for the purposes of this discussion that the fee is illegal under the FDCPA), it is far from clear that such a misrepresentation would fall within the category that is "actionable whether made to the consumer directly, or indirectly through his lawyer." *Evory*, 505 F.3d at 775. In delineating statements that would be actionable even if only communicated to a consumer indirectly through her lawyer, the Seventh Circuit spoke of "[a] false claim of *fact*," such as a dunning letter that "misrepresents the unpaid balance of the consumer's debt." *Id.* (emphasis added). Defendants persuasively argue that the statement regarding the optional $7.50 fee cannot be considered a "false representation" under § 1692e(2)(A), which prohibits the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

Additionally, even if, as plaintiff suggests, Longo's attorney could not have readily determined the legality of the convenience fee, the language in the July 21 letter regarding the fee would be unlikely to deceive a competent lawyer. As the defendants and *Evory* suggest, a competent attorney "would not have to be an expert on the [FDCPA] to be able to look it up and discover" § 1692f, the provision bearing on whether the $7.50 convenience fee was permissible. *See Evory*, 505 F.3d at 775. Nevertheless, as plaintiff points out, the attorney might be unable to confirm whether or not the fee was permissible, due to his lack of access to the agreement creating the debt. That the attorney could not verify whether the FDCPA permits a fee for an optional service (which has not yet been, and may well never be, rendered by the debt collector), however, does not suggest that the attorney has been deceived. On the contrary, by finding § 1692f and determining that it governed the permissibility of the $7.50 convenience fee, the

attorney necessarily would not have been deceived, regardless of whether he was able to answer the ultimate question.[2]

For all of these reasons, the representations in the July 21 letter regarding the convenience fee would be unlikely to deceive a competent lawyer and thus are not actionable. *See Evory*, 505 F.3d at 775. Summary judgment must therefore be granted in favor of the defendants as to the plaintiff's claims.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion for summary judgment [#113] is granted. Plaintiff's motion for summary determination [#110] is denied as moot. Judgment is entered in favor of the defendants as to the claims of the named plaintiff, Sonya L. Longo.

This matter will be called for a status hearing on October 23, 2008 at 10:00 a.m. to discuss resolution of any remaining class issues, including defendants' request to decertify the class.

Dated: September 26, 2008            Enter:_____
                                            JOAN HUMPHREY LEFKOW
                                            United States District Judge

---

[2] As the Seventh Circuit warned in *Evory*, it is "exceedingly doubtful that any lawyer involved in representing debtors would be deceived by the settlement offers made by debt collectors, and doubt[s] therefore that any cases based on such offers could survive summary judgment or even a motion to dismiss were the offer directed to the consumer's lawyer rather than to the consumer." 505 F.3d at 776.